UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Robert B. Colley, on behalf of himself and all similarly situated employees, | : | Case No. 1:15-cv-720 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| The Scherzinger Corporation, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

Before the Court is Plaintiffs' motion for an order conditionally certifying this case as a collective action under the Fair Labor Standards Act.  (Doc. 5)  Defendant opposes the motion (Doc. 18), and Plaintiffs have filed a reply.  (Doc. 31)

For the following reasons, the Court will grant Plaintiffs' motion.

**Factual Background**

Plaintiff Robert Colley worked for the Scherzinger Corporation between 2012 and 2015.  He filed his complaint in this case on November 8, 2015, to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), and under Ohio and Kentucky wage statutes.  He also alleges a claim under Article II, Section 34a of the Ohio Constitution.  (Doc. 1)  Colley's complaint alleges that in December 2012, Scherzinger implemented a Universal Technician Pay Scale for pest technicians (like Colley) who prior to that time were paid on an hourly basis, and received one and a half times their regular pay for any hours over 40 worked in one week.  The Universal Technician Pay Scale declared that all technicians were exempt from overtime

requirements under federal and state law. Colley's motion seeks conditional certification of an FLSA opt-in class consisting of "All Defendant Scherzinger's employees paid under the Universal Technician Pay Scale for work performed in any state at any time within the three-year period preceding the opt-in date."

Colley filed a declaration and opt-in agreement in support of his certification motion. (Doc. 3) He states that during the time he worked for Scherzinger, he believes that sixty or more technicians worked as Universal Technicians and were subject to the Pay Scale policy. In his declaration, he states that upon implementation of the new policy, Scherzinger stopped paying him and all other Universal Technicians overtime premiums based on all our pay received in a workweek and stopped tracking our actual hours worked for each day worked during a workweek." (Doc. 3 at ¶8, PAGEID 22) Colley talked to other technicians on multiple occasions about the new policy, and other technicians told him they were paid in the same manner as Colley, and that their actual hours worked were no longer tracked. He states that in some weeks, he received less than $10.88 per hour for total hours he worked; in other weeks the average hourly wage was somewhat higher (from $11.55 to $11.93 per hour). (Id. at ¶¶12-16, PAGEID 23) Colley also states that he has talked to other technicians who are interested in joining this action because the new pay policy "was a common source of discontent amongst the Universal Technicians." (Id. at ¶22, PAGEID 24)

Scherzinger opposes the certification motion. It cites the Sixth Circuit's articulation of the criteria for conditional certification under 28 U.S.C. §216(b) when certification is sought early in a case, prior to discovery: "(1) the plaintiffs must actually be similarly situated, and (2) all plaintiffs must signal in writing their affirmative consent

to participate in the action."  Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006)(internal quotations and citations omitted).  While recognizing that this standard is "fairly lenient," Scherzinger argues that Colley has not shown he is similarly situated to the proposed class.  It also contends that many members of the proposed class have signed binding arbitration agreements with Scherzinger that preclude their participation in this lawsuit.

Scherzinger filed a declaration of H.W. Althaus, Scherzinger's President since December 2012 wit its opposition.  (Doc. 18-1)  Althaus states that Scherzinger historically employed two types of technicians: termite technicians and pest technicians. The latter group provided a broader range of pest control services and were paid on a commission basis, while termite technicians were paid hourly.  Colley started working for Scherzinger as a termite technician in March 2012.  In December 2012, Scherzinger eliminated the distinction between the two groups of technicians, and virtually all pest control technicians were thereafter employed as Universal Technicians, performing all pest control services offered by the company.  All Universal Technicians were subject to the Universal Technician Pay Scale, and are paid on a commission basis, calculated on sales made to their customers.  The commission rate increases with a technician's length of tenure with the company, starting at 20% for the first six months, and rising to 25% after two and a half years.  (Id. at ¶11, PAGEID 107-108)

Universal Technicians receive a weekly "service production base" which is the dollar value of the amount of work Scherzinger promises to that technician for that week.  This amount is between $1,500 for new technicians, and $1,756 for more experienced technicians.  Scherzinger pays a weekly draw against commissions of

approximately 25% of the production base amount.  Each technician is required to track the hours he or she works by logging into a company-provided mobile application, including hours worked outside of the normal working day.  Each technician is asked to confirm the accuracy of the company's time records for each week that they work.  Althaus attaches a copy of such a confirmation for Colley.  (Doc. 18-1, Ex. 2, PAGEID 116)

Althaus also avers that nearly two-thirds of the proposed FLSA class members (51 out of 82 potential class member/technicians), including opt-in plaintiff Steven Davenport, have executed Scherzinger's alternative dispute resolution contract, requiring that any employment-related disputes be submitted to binding arbitration before the American Arbitration Association.  This contract also includes the technicians' waiver of their right to pursue class-wide relief against the company.  Scherzinger argues that the relatively small number of remaining potential members  should be weighed in considering whether to conditionally certify Colley's FLSA claim.

**ANALYSIS**

Colley's motion for conditional certification was filed five days after his original complaint.  Since then two individuals have filed opt-in notices (Davenport and McCormick).  Scherzinger correctly notes that a fairly lenient standard applies to Plaintiffs' motion at this early stage of the case.  Lead plaintiffs have the burden at this stage of demonstrating that they are similarly situated to the potential opt-in plaintiffs.  In order to show that they are "similarly situated," plaintiffs must show that their "claims [are] unified by common theories of defendants' statutory violations, even if the proofs of those theories are inevitably individualized and distinct."  O'Brien v. Ed Donnelly Enters.,

575 F.3d 567, 585 (6th Cir. 2009).

This burden is not as stringent as that applied to class certification under Fed. R. Civ. P. 23. The Sixth Circuit noted that the plaintiffs were "similarly situated" if a single, FLSA-violating policy allegedly affects all of them, even though ... "proof of a violation as to one particular plaintiff does not prove that the defendant violated any other plaintiff's rights under the FLSA." Id. And in Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546-547 (6th Cir. 2006), the Sixth Circuit observed that an FLSA plaintiff must simply demonstrate that he is similarly situated, not identically situated, with the putative class members, which may be premised upon "a modest factual showing."

Scherzinger contends that Colley is not similarly-situated to the putative class members because individualized determinations will be required in order to determine if Scherzinger's application of the pay scale violated FLSA. It asserts that the pay plan itself is "unquestionably lawful" under the exemption of Section 7(i) of the FLSA. That exemption states that an employer does not violate the FLSA when retail or service employees work more than 40 hours, so long as "(1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him ..., and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. §207(i). Individualized calculations would be required in order to determine if any Scherzinger Universal Technician was properly paid for any representative period, in order to demonstrate Scherzinger's compliance with this exemption.

Scherzinger cites Steger v. Life Time Fitness, Inc., 2016 U.S. Dist. LEXIS 7267 (N.D. Ill., January 21, 2016), where the district court recently denied conditional FLSA

certification to a group of plaintiffs who worked at defendant's fitness centers.

Defendant in that case relied on the Section 7(i) service employee exemption.  The

district court held that application of the exemption "would require highly individualized

inquiries into each plaintiff's hours and compensation that could not be accomplished by

common proof but would instead require 'the equivalent of mini-trials' for each Plaintiff."

Id. at *12 (internal citations omitted).  But in that case, the district court noted that limited

discovery had already been completed, including depositions of class members.

Moreover, the evidence to date was that many plaintiffs testified that their individual

supervisors threatened to place them on performance improvement plans, or even

terminate them, if they fully reported all of the hours they actually worked.  But the

defendant's corporate policy requires all employees to accurately report all hours

worked.

        The district court applied an intermediate level of review in determining whether

to grant conditional certification, in view of the discovery that had already been

conducted.  Given the evidence regarding "unwritten, de facto policy of intimidating and

pressuring employees to work off the clock," the district court found that plaintiffs had

not satisfied the intermediate-level standard of showing they were similarly situated to

the putative class.  "The pressure that each [employee] felt to work off the clock

depended on his or her location, his or her job title and responsibilities, his or her

department head at the particular moment, his or her productivity, and his or her

personal decisions.  Although two putative plaintiffs might share one or two of these

factors in common, a highly individualized analysis would nonetheless be necessary to

determine the extent to which each employee worked off the clock and whether that

conduct was attributable to Life Time." Id. at *10.

This case is distinguishable from Steger for two primary reasons.  First, this case is in its infancy, and no discovery has been taken.  Second, Colley is challenging Scherzinger's written and formally adopted Universal Technician Pay Scale; his allegations do not involve unofficial policy or differential enforcement of written policies by different supervisors in different locations.  Moreover, at the conditional certification stage, the Court does not consider the merits of the claims, resolve factual disputes, or decide substantive issues.  See Swigart v. Fifth Third Bank, 276 F.R.D. 210, 214 (S.D. Ohio 2011), and citing cases within the Sixth Circuit.  In Swigart, the district court granted conditional certification to a group of mortgage loan officers alleging FLSA violations against the bank, which relied on an administrative exemption in classifying the officers as exempt.  The district court noted in that case that while the bank's defense "may be compelling, the Court finds it inappropriate to engage in a merits analysis at this stage of the lawsuit."  Id.

Scherzinger also argues that two-thirds of the proposed class members executed a binding arbitration agreement.  As a result, those individuals are clearly not similarly situated to Colley and opt-in Plaintiff Ryne McCormick.  (Opt-in plaintiff Steven Davenport signed an arbitration agreement, and Scherzinger has moved to dismiss him as a plaintiff on that basis.)   Scherzinger argues that its arbitration agreement is valid and enforceable against those employees who executed one.

Colley responds that the circumstances surrounding the execution of the arbitration agreement amount to  fraudulent inducement.  Plaintiffs filed an amended complaint on February 1, 2016 (Doc. 25), alleging a claim of fraud in the inducement

with respect to these arbitration agreements. According to Plaintiffs' allegations, the agreement was presented to Scherzinger technicians during an August 2015 meeting (after Scherzinger had received Colley's demand for pay records). Certain representations were made by Scherzinger representatives about what the agreement meant, and Davenport asserts that he signed the agreement because he believed he would be fired if he refused. As relevant here, the arbitration agreement states in part: "Except for representative claims which cannot be waived under applicable law, ..." the parties agree to submit disputes to the American Arbitration Association. Scherzinger agrees to pay the arbitration costs, but the employees "... shall be solely responsible for any costs they individually incur in connection with the Arbitration, including attorney's fees. Employee waives any right Employee may have to seek relief by or through collective or class action." (Doc. 25 at ¶60, PAGEID 158)

A somewhat analogous situation was before the district court in Swigart v. Fifth Third Bank, supra. From 2004 through 2010, Fifth Third Bank considered its mortgage loan officers to be exempt from FLSA's overtime provisions based on the statute's exemption for administrative employees. On March 24, 2010, the Department of Labor issued an administrative interpretation concluding that the exemption did not apply to a mortgage loan officer. By January 3, 2011, the bank had reclassified the position, restructured the position's compensation, and had paid its currently employed officers overtime pay for the period from March 24, 2010 through January 3, 2011. Each employee also signed an agreement not to assert a claim for additional overtime pay.

The district court ordered that the notice sent to putative class members must include language stating that any employee who signed such an agreement was not

precluded from participating in the lawsuit, because that agreement "cannot be used as either a settlement of your claim or a waiver of Fifth Third's liability." The district court noted that an employee's right to overtime pay under the FLSA is nonwaivable, citing Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981). See Swigart, 276 F.R.D. at 215.

While Fifth Third did not argue that the plaintiffs were not similarly situated to employees who had signed these agreements, the district court's conclusion applies here. FLSA claims are not waivable, and the arbitration agreement does not include "representative claims which cannot be waived under applicable law." Moreover, Scherzinger's argument that employees who signed an arbitration agreement are not similarly situated to Colley asserts that those agreements are valid and binding as a matter of law. That issue, which goes to the merits of Scherzinger's contention, is not before the Court at this juncture. While Scherzinger's arguments may be persuasive and eventually decisive with regard to the claims of those employees, the Court will not consider the merits of the claims or defenses in determining whether to grant conditional FLSA certification.

Scherzinger also contends that if any class is conditionally certified, employees who executed the arbitration agreement must be excluded, because they will be required to arbitrate any wage and hour claim they assert against Scherzinger. That argument also assumes that the arbitration agreements are fully valid and binding on those employees, an issue that the Court has not addressed.

Scherzinger also objects to any conditionally certified class that exceeds the generally-applicable two-year statute of limitations of 29 U.S.C. §255(a). Only in cases

of willful violations is the limitations period extended to three years.  And willful conduct requires evidence that Scherzinger knew or recklessly disregarded the requirements of the FLSA.  Scherzinger relies on the Althaus Declaration, in which Althaus affirms that, contrary to Colley's conclusory allegations, Scherzinger **did** track technicians' hours worked, and did not willfully or intentionally refuse to pay them what they were due under the pay scale and under the FLSA.

Colley responds that this argument, once again, involves the merits of his claims and is inappropriate for resolution at this stage of the case.  Colley cites several cases in this district ordering FLSA notices covering a three year period.  See Engel v. Burlington Coat Factory Direct Corp., 2013 U.S. Dist. LEXIS 77506 (S.D. Ohio, June 3, 2013), and Hughes v. Gulf Interstate Field Servs., 2015 U.S. Dist. LEXIS 88205 at *13 (S.D. Ohio, July 7, 2015).  See also, Swigart v. Fifth Third, supra, approving notice to loan officers who were employed at any time within three years of the date of the order. The absence of willful conduct is not established as a matter of law by the pleadings filed to date, and the Court rejects Scherzinger's argument in this regard.

After considering the parties' respective arguments and contentions, the Court concludes that conditional certification of Colley's proposed FLSA class is appropriate here.  Colley has produced sufficient evidence to establish that he is similarly situated to the Universal Technicians who became subject to the pay scale in December 2012.

Form of Notice

Plaintiffs submitted a proposed form of notice with the certification motion.  (Doc. 5-1)  Scherzinger objects to including the case caption, to the three-year notice period, and to the line stating "RE: Wage and Hour Lawsuit" (arguing it should be replaced with

-10-

a description of this litigation).  The Court overrules all of these objections.  Including the case caption is not misleading nor a judicial endorsement of the lawsuit.  Scherzinger proposes adding additional language to the "Description of the Lawsuit," stating that it denies any liability, and asserts that it properly classified Universal Technicians as exempt.  Plaintiffs do not object to the proposed language, and it therefore should be included at the end of that section.  Scherzinger also requests that similar language be included in the section entitled "Composition of the Class."  Plaintiffs object to that addition as unnecessary and confusing, because composition of the class has nothing to do with Scherzinger's defenses to the merits of Plaintiffs' claims.  The Court agrees, and overrules Scherzinger's request.

Plaintiffs state that in order to take account of the pending arguments regarding the arbitration agreements, this section of the notice should also include this statement: "Even if you signed an agreement to arbitrate claims you may have against Defendant Scherzinger, you may participate in this lawsuit for now, but may later be required to proceed via arbitration rather than in court."  This language accurately incorporates the Court's rulings with respect to the composition of the class, and therefore this language shall be included in the class composition description.

Scherzinger objects to the section entitled "If You Join This Lawsuit" because it fails to inform potential class members that they may be required to pay costs if Scherzinger prevails.  A colleague in this district recently denied a similar request.  See Hughes v. Gulf Interstate Field Servs., Inc., Case No. 2:14-cv-432, Doc. 66 at pp.  3-4 (S.D. Ohio, September 16, 2015), and quoting Guzman v. VLM, Inc., 2007 WL 2994278 at *8 (E.D.N.Y. Oct. 11, 2007), which rejected similar language due to the potential "in

terrorem effect that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in any significant degree."   The Court agrees with this analysis and rejects Scherzinger's proposed additional language.

Scherzinger objects to the bold typeface for the notice's anti-retaliation provision. It does not object to the language, merely to the emphasis placed on it.  The Court sees no harm from emphasizing this language, which is a protection afforded under the FLSA.  Moreover, the Court sees no prejudice to Scherzinger that could result from this emphasis.  This objection is overruled.

Finally, Scherzinger objects to the consent form attached to the notice, arguing it contains extraneous information (such as the statement that the opt-in plaintiff believes that he or she is "similarly situated" to Plaintiffs).  Plaintiffs do not object to Scherzinger's proposed modifications to the form, so long as the caption, the signature line, and the information requested at the bottom of the form remains.  Given Plaintiff's lack of opposition, the consent form should be modified to include Scherzinger's proposal.

Plaintiffs shall file with the Court a proposed form of notice and consent form that incorporates the Court's rulings by April 15, 2016.  The parties should consult about an appropriate date by which consent forms must be returned.  If they are unable to reach an agreement on a date, the Court will choose a date and inform the parties so the date may be inserted into the form.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for conditional certification (Doc. 5) is granted.

SO ORDERED.

DATED: April 6, 2016                          s/Sandra S. Beckwith
                                              Sandra S. Beckwith, Senior Judge
                                              United States District Court