UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Robert B. Colley, on behalf of himself and all similarly situated employees, | : | Case No. 1:15-cv-720 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| The Scherzinger Corporation, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

Before the Court is Defendant's motion to dismiss all claims of the opt-in Plaintiff, Steven Davenport.  (Doc. 20)  Defendant argues that Davenport signed an agreement to arbitrate any employment-related claims he may wish to assert against Scherzinger. The motion argues that the agreement is valid and binding, and requires the Court to dismiss Davenport as a plaintiff.  Davenport opposes the motion (Doc. 29), and Defendant has filed a reply.  (Doc. 35)   Also pending is Defendant's motion for judgment on the pleadings concerning Davenport's claim of fraudulent inducement. (Doc. 38)  That motion also concerns Scherzinger's arbitration agreement, and is fully briefed.

**FACTUAL BACKGROUND**

Plaintiff Robert Colley's original complaint in this case (Doc. 1) asserted claims against Scherzinger under the Fair Labor Standards Act (29 U.S.C. §201 et. seq.), the Ohio Minimum Fair Wage Standards Act (Ohio Rev. Code 4111 et seq), and the Kentucky Wages and Hours Act (Ky. Rev. Stat. 337.020 et seq).  On December 4,

2015, Steven Davenport filed a notice of opt-in consent to join the case as a plaintiff. (Doc. 12)  Scherzinger moved to dismiss Davenport's claims (and those of any other opt-in plaintiff who signed the arbitration agreement).

H.W. Althaus, Jr. is the President of Scherzinger, and has worked for the company since 1979.  His declaration states that Scherzinger adopted a written complaint procedure for all its employees.  The copy signed by Davenport on August 14, 2015 is attached as Exhibit 3 to his declaration.  (Doc. 18-1, Ex. 3, PAGEID 117-119)  The procedure sets forth a multi-step complaint resolution process that begins with a discussion between the employee and his or her immediate supervisor, and then with a manager.  If no resolution is achieved, the Human Resources Manager engages in fact-finding and articulates the company's position.  The President ultimately determines if the complaint can be resolved.  If not, the next step is non-binding mediation by a neutral professional who is chosen and paid for by Scherzinger.  Other than the mediator's fees, the parties are responsible for their individual costs at this stage, including attorney's fees.

If mediation is unsuccessful, the next step is arbitration.  The agreement states:

> Except for representative claims which cannot be waived under applicable law, the Parties agree that any and all unresolved issues shall be solely, finally, exclusively and conclusively adjudicated through Arbitration before [the] American Arbitration Association ("AAA") in Cincinnati, Ohio pursuant to the rules of the AAA.  The Company agrees to pay the cost of the Arbitrator and the Parties agree that they shall be responsible for any costs they individually incur in connection with the Arbitration, including attorney's fees.  Employee waives any right Employee may have to seek relief by or through a collective or class action.  Arbitration shall proceed solely on an individual basis without the right for any claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of others.  The arbitrator's authority to resolve and make written awards is limited to claims between

-2-

the employee and the Company alone.  Claims may not be joined or consolidated unless agreed to in writing by all parties.  No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

The Parties understand and fully agree that by entering into this Agreement to arbitrate, they are giving up their constitutional right to have a trial by jury, and are giving up their normal rights of appeal following the rendering of a decision except as the law provides for judicial review of arbitration proceedings.  The parties anticipate that by entering into this Agreement, they will gain the benefits of a speedy and less expensive dispute resolution procedure.

Claims not covered by this Agreement are claims for workers' compensation, unemployment compensation benefits or any other claims that, as a matter of law, the Parties cannot agree to arbitrate.  Nothing in this Agreement shall be interpreted to mean that Employee is precluded from filing complaints with the federal Equal Employment Opportunity Commission or the National Labor Relations Board.

(Doc. 18-1, Ex. 3 at PAGEID 118)

After Scherzinger moved to dismiss, Plaintiffs filed a first amended complaint in which Davenport (for himself and other similarly-situated Scherzinger employees) alleged a claim for fraudulent inducement, contending the arbitration agreement is unenforceable. (Doc. 25)  Davenport alleges that Scherzinger "repeatedly made express and inherently false statements" to him and other employees, "focused on the alleged fairness and cost benefits" to Davenport, and represented that the agreements were "more in favor of the employees than the Company."  (Doc. 25 at ¶¶66-68)   He also alleges that Scherzinger's representatives repeated a false statement included in the agreement, namely that "the Parties anticipate that by entering into this agreement, they will gain the benefits of a speedy and less expensive dispute resolution procedure." (Id. at ¶70)

Scherzinger then filed its motion for judgment on the pleadings on the fraudulent

-3-

inducement claim, arguing the claim failed to state a cognizable claim and incorporating its arguments raised in the motion to dismiss.  (Doc. 38)  Davenport's opposition includes his declaration, in which he states that since he began working for Scherzinger as a Universal Technician, monthly meetings were held with all employees, supervisors, and company officers.  One such meeting was held on August 14, 2015, when the Human Resources Director Regina Ford distributed copies of the complaint procedure, and informed the group that the company was establishing a method for registering and resolving complaints based on chain of command.  Ford did not read the document aloud word for word, but described some of the statements included in it.

President Althaus also spoke at this meeting, and commented on the arbitration clause.  Davenport recalls him saying "... that it was actually more in favor of the employees and that the company would pick up the bill for arbitration if the issues were not resolved during the earlier steps in the process."  Ford said that the procedure would more quickly resolve complaints, and would be less costly for employees.  She also said that the document distributed at that meeting was an updated one, but Davenport did not recall seeing any prior version.  Ford then directed all Universal Technicians present at the meeting to sign the document.  Someone in the room asked what would happen if an employee refused to sign, and Ford responded "you can leave."  Davenport understood this comment to mean that if he did not sign the document he would be fired.  Davenport, along with approximately 50 other Scherzinger technicians, signed the document.

Davenport asserts that when he signed it, he did not know he was giving up his right to seek reimbursement of his attorney's fees, and he had no opportunity to discuss

-4-

the document with anyone else before he signed it.   He cannot afford to pay his

attorneys in this case, and he understands that the arbitration agreement would require

him to pay their fees even if he prevails.  He further states that on January 6, 2016, he

filed an unfair labor practice charge with the NLRB, challenging Scherzinger's arbitration

agreement.  (Doc. 29-1)

## DISCUSSION

Federal law and policy strongly favor arbitration.  The Federal Arbitration Act,

9 U.S.C. §2, states that arbitration clauses are "... valid, irrevocable, and enforceable,

save upon such grounds as exist at law or in equity for the revocation of any contract."

The Ohio Arbitration Act (Ohio Rev. Code 2711.01(A)) employs identical language, and

the analysis of whether an arbitration agreement is enforceable is essentially identical

under the federal and Ohio statutes.  State contract law applies to determine whether

Scherzinger's arbitration agreement is enforceable against Davenport.  Tillman v.

Macy's, Inc., 735 F.3d 453, 456 (6th Cir. 2013).

Davenport admits that in order to succeed on his fraudulent inducement claim, he

must demonstrate "that the arbitration provision itself in the contract at issue, and not

merely the contract in general, was fraudulently induced."  Abm Farms v. Woods, 81

Ohio St.3d 498, 502 (Ohio 1998)(internal citation omitted).  In that case, the Ohio

Supreme Court held:

> A claim of fraud in the inducement arises when a party is induced to enter
> into an agreement through fraud or misrepresentation.  The fraud relates
> not to the nature or purport of the [contract], but to the facts inducing its
> execution ... . In order to prove fraud in the inducement, a plaintiff must
> prove that the defendant made a knowing, material misrepresentation with
> the intent of inducing the plaintiff's reliance, and that the plaintiff relied
> upon that misrepresentation to her detriment.

-5-

Id. (internal citations and quotations omitted).  The plaintiff in that case signed two documents in order to open a brokerage account.  One of those documents described the basic relationship between the parties, and included a signature line for clients who wished to decline a margin account.  Following plaintiff's signature on the form were several acknowledgments, one stating that she had received, read and understood the separate Account Agreement given to her.  She also acknowledged that "In accordance with the pre-dispute arbitration clause in Section 15 of the Brokerage Agreement on page 7, I am agreeing in advance to arbitrate any controversies which may arise with you."  Plaintiff alleged the arbitration agreement was fraudulently induced, asserting that the broker failed to review or explain the agreements mentioned in the acknowledgments, and that he did not even mention the term arbitration to her.   The Ohio Supreme Court rejected her claim, observing that it was centered on "... the naked truth that she did not read the contract. ... A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed."  Id. at 503 (internal citations and quotations omitted).

Davenport claims that he relied on Scherzinger's representation that arbitration was a "less expensive dispute resolution mechanism" when he signed the agreement. But he claims that is not true, because the agreement not only eliminates his statutory right to recover his attorney's fees if he is successful, it also bars him from bringing a collective action.  Since these aspects of the agreement make arbitration "more expensive" for him, he argues he was fraudulently induced to sign the agreement.

In its motion to dismiss and for judgment on the pleadings, Scherzinger argues that Davenport's allegations fail to state a cognizable claim.  Fraudulent inducement requires him to show by clear and convincing evidence that Scherzinger made a material representation of fact, which it knew was false or with utter disregard as to its truth or falsity, with intent to mislead Davenport, who justifiably relied on the representation to his detriment.  Glazer v. Lehman Bros., 394 F.3d 444, 459 n.7 (6th Cir. 2005), citing Davis v. Sun Refining and Marketing Co., 109 Ohio App.3d 42, 55 (Ohio App. 1996).  While Davenport's complaint alleges that Scherzinger made several express and inherently false statements, Davenport's response memorandum clarifies that he is not alleging that any Scherzinger representative made a statement that **contradicts** the written terms of the agreement (which would likely be barred by the parol evidence rule).  He now states that Scherzinger's representations during the meeting "... mimicked (or, at the very least, corroborated) the express, written terms of the arbitration agreement."  (Doc. 41 at 3)  He asserts that the only false representation he relies on to support his claim is the statement in the arbitration agreement (which was also expressed during the meeting) that "the Parties anticipate that by entering into this agreement, they will gain the benefits of a speedy and less expensive dispute resolution procedure."  (Doc. 41 at 3, quoting from paragraph 70 of the amended complaint.)

To support a fraudulent inducement claim, the alleged misrepresentation must be one of material fact.  Statements of opinion, or promises of future action, are insufficient.  See, e.g., Davis v. Sun Refining, supra (court affirmed a judgment on a fraud claim that was based on seller's false representation that underground pipes had been removed

-7-

from the property before its sale); <u>McCarthy v. Ameritech Publ., Inc.</u>, 763 F.3d 469, 478 (6th Cir. 2014)(employer representative falsely told plaintiff that she was not eligible for retirement health benefits, forcing her to extend her employment for another year at a lower salary).  And see <u>Am. Trim, LLC v. L&T Techs., Inc</u>., 2014-Ohio-1879 (Ohio App. 2014), where the Ohio court of appeals stated that "a classic claim of **fraudulent inducement** asserts that a misrepresentation of **facts** *outside the contract* or other wrongful conduct induced a party to enter into the contract."  Id at *P81 (internal citations omitted, emphasis in original).

Scherzinger's representation is not one of a material fact that can support Davenport's claim.  A party's "anticipation" of a "less expensive" process or  outcome is essentially an opinion about that outcome, or a prediction about results that the party hopes to achieve in the future.  The statement in Scherzinger's arbitration agreement is not a statement of a material fact upon which Davenport was entitled to rely.  Moreover, Scherzinger points out that in many situations, arbitration **is** a more "speedy and less expensive dispute resolution procedure" than litigation in a court.  Davenport cannot show that Scherzinger knew that statement was factually false, or that it utterly disregarded whether it was true or false.

Davenport argues that the agreement forbids a prevailing party from recovering his attorney's fees in an arbitration proceeding, which shows that the statement is false. However, Scherzinger has conceded and stipulated that the arbitrator has the power and authority to award fees to a prevailing employee under the terms of its arbitration agreement.  (See Doc. 34, Scherzinger's stipulation regarding attorney's fees.)

Scherzinger's agreement expressly incorporates the American Arbitration Association's Employment Arbitration Rules. Rule 39(d) of the AAA rules clearly states that the arbitrator may grant "any remedy or relief that would have been available to the parties, had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law."[1] Scherzinger cites several cases rejecting challenges to arbitration agreements that included language similar to Scherzinger's, in view of the agreement's incorporation of the AAA rules. For example, in Gillispie v. Village of Franklin Park, 405 F.Supp.2d 904 (N.D. Ill. 2005), the arbitration provision stated that proceedings will be conducted under AAA rules, and that the "costs and expenses, not inclusive of attorneys' fees, of arbitration, shall be borne by the party who does not prevail." Plaintiff claimed the arbitration provision was unenforceable because he could not recover his attorney's fees if he were successful in arbitration, and thus could not be awarded the full relief he would be entitled to in a discrimination lawsuit. The district court rejected the plaintiff's narrow interpretation of the agreement, concluding it must be read as a whole and it expressly incorporated the AAA rules that authorize the arbitrator to award fees. And in the event that plaintiff did not prevail at arbitration, he was free to raise the applicability of the fee provision before the arbitrator. The same situation would pertain here.

Davenport's fraudulent inducement allegations fail to state a plausible claim, because he has not alleged that Scherzinger made a material false representation of fact upon which he justifiably relied in signing the agreement. Scherzinger's motion for

---

[1] The AAA Rules are attached as Exhibit 4 to the second declaration of H.W. Althaus, Doc. 35-1; Rule 39(d) appears on page 29 of those rules, at PAGEID 303.

judgment on the pleadings on this claim (Doc. 38) is therefore granted.

In opposing Scherzinger's motion to dismiss his claim, Davenport also argues that even if his fraudulent inducement arguments fail, the arbitration agreement is unenforceable for other reasons.  The agreement states that it does not cover "representative claims which cannot be waived under applicable law," which he contends includes his FLSA claim.  Even if it does cover those claims, he suggests that the agreement attempts to give Scherzinger an unlawful economic advantage over its competitors, contravening the decision in Boaz v. FedEx Customer Information Services, Inc., 725 F.3d 603 (6th Cir. 2012).  And he argues that any agreement that purports to require employees to forfeit their rights to pursue class or collective action wage and hour claims violates the National Labor Relations Act.

As to the first issue, Scherzinger notes that federal law requires the courts to interpret arbitration clauses broadly, and to resolve any doubts as to their coverage in favor of arbitration.  See Nestle Waters N.A., Inc. v. Bollman, 505 F.3d 498 (6th Cir. 2007), discussing cases establishing that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. ... [I]n the absence of any express provision excluding a particular grievance from arbitration ... only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  Id. at 503-504 (internal citations and quotations omitted). Scherzinger argues that its Complaint Procedures apply whenever an employee has "a problem or complaint concerning your employment (includes wages, hours, working conditions, etc.), or if you believe you are not being treated fairly ...".  The procedures clearly would include a claim for overtime pay under the FLSA.

And contrary to Davenport's contention, it is beyond dispute that FLSA claims may be arbitrated.  See Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306, 313 (6th Cir. 2000), citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991).  And arbitration agreements are not invalid because employees are prohibited from collective or class-based arbitration.  Scherzinger cites Carter v. Countrywide Credit Indus., 362 F.3d 294 (5th Cir. 2004), where the Fifth Circuit rejected the plaintiffs' contentions that their employer's arbitration agreement (which they were required to sign as a condition of employment) was unenforceable because it required them to arbitrate their FLSA claims individually.  The court of appeals found nothing in the FLSA's text or legislative history that would preclude individual arbitration of claims.  And the agreements were not unconscionable simply because they required plaintiffs to proceed individually rather than collectively.  In a similar vein, the Supreme Court has held that arbitration agreements that include waivers of class-based arbitration did not violate federal antitrust statutes, nor prevent plaintiffs from effectively vindicating their statutory antitrust rights, even though individual plaintiffs lacked the economic incentive to individually pursue their claims.  See American Express Co. v. Italian Colors Rest., 133 S.Ct. 2304, 2310 (2013).

Davenport relies heavily on Killion v. KeHE Distribs., LLC, 761 F.3d 574 (6th Cir. 2014), which he contends prohibits waivers of FLSA collective action rights.  That case was brought by sales representatives employed by the defendant, who alleged they were entitled to overtime pay.  When they sought certification as a collective action, the defendant argued that many of them had waived their right to join the lawsuit by executing separation agreements during a restructuring that included their agreement to

-11-

decline to join in any class or collective action brought against the defendant. The Sixth Circuit began its analysis by noting that no court of appeals' decisions have squarely addressed the issue of FLSA waivers outside of the arbitration context. Given the lack of authority, the court adopted the framework articulated in Boaz v. FedEx Customer Info. Servs., Inc., 725 F.3d 603 (6th Cir. 2013), to analyze the question. Boaz dealt with a provision in the plaintiff's employment agreement that required an employee to bring any legal action against the employer no later than six months after an event giving rise to the claim. Plaintiff filed an FLSA claim more than six months after the event occurred, and the employer moved to dismiss based on the employment agreement. The Sixth Circuit held that the right to sue within the full limitations period provided by the FLSA could not be waived by agreement. In Killion, it reached the same conclusion with respect to the plaintiffs' right to participate in the FLSA collective action.

However, the court in Killion specifically noted: "We are aware, of course, that the considerations change when an arbitration clause is involved. Boaz explained that 'an employee can waive his right to a judicial forum only if the alternative forum allow[s] for the effective vindication of [the employee's] claim. ... **Arbitration, it noted, is such a forum.**" Killion, 761 F.3d at 591, quoting Boaz, 725 F.3d at 606-607 (emphasis added). Given the different facts and the Sixth Circuit's explicit recognition of arbitration as an acceptable forum, these cases simply do not support Davenport's assertion that federal law prohibits an arbitration clause that limits employees to individual, rather than collective or class-based statutory claims.

Davenport's unconscionability arguments, which rely on similar contentions, also

-12-

lack merit.  He suggests that the agreement is procedurally unconscionable because

Scherzinger's representative handed the document to the employees, and told them

they had to sign it.  He suggests this presents a textbook case of procedural

unconscionability.  The Court disagrees; as a colleague in this district observed, the

application of the doctrine of adhesion contracts to the employment context lacks force:

"If an employer were not allowed to dictate terms of a new policy and impose same

upon its at-will employees as a condition of continued employment, then 'at will' would

no longer mean 'at will.'  That might be the better public policy ... . It is not, however, the

current law, and it is not for this federal court to inject its own policy views into the at-will

employment doctrine of Ohio."  Raasch v. NCR Corp., 254 F.Supp.2d 847, 867 (S.D.

Ohio 2003).  Davenport's substantive unconscionability argument relies on the issues

already discussed and rejected, regarding attorney's fees and the prohibition on

collective arbitration.  The agreement is not unconscionable based on these

contentions.

Davenport also argues that the arbitration agreement violates the National Labor

Relations Act, citing a 2015 NLRB decision in another case.  Scherzinger disagrees,

citing three appellate decisions rejecting NLRB decisions that invalidate arbitration

agreements that prohibit class or collective arbitration.  For example, in D.R. Horton,

Inc. v. NLRB, 737, F.3d 344 (5th Cir. 2013), the court of appeals rejected the NLRB's

decision that Section 7 of the National Labor Relations Act conflicts with the Federal

Arbitration Act, because Section 7 guarantees employees the right to engage in

concerted action.  In reaching its conclusion, the Fifth Circuit noted: "Every one of our

sister circuits to consider the issue has either suggested or expressly stated that they

would not defer to the NLRB's rationale, and held arbitration agreements containing class waivers enforceable." Id. at 362 (internal citations omitted).  The Fifth Circuit's analysis of the issue is persuasive.  And in the absence of any contrary Sixth Circuit or Supreme Court precedent, the Court adopts its conclusion that the NLRA does not prohibit an arbitration agreement that includes a prohibition on collective arbitration of FLSA claims.

Finally, Davenport contends that if the agreement is valid and applies to his claims in this case, it fails to expressly state that it applies to any claims that accrued before August 14, 2015, the date on which Davenport and Scherzinger executed the agreement.  He notes that the agreement uses exclusively present tense language; its preamble states that "if you have a problem or complaint," or "if you believe you are not being treated fairly," the employee must follow the procedures described.  It instructs employees to "discuss" problems with their supervisors; or at Step 3, that the Human Resources Manager "will" engage in fact-finding.  Just above Davenport's signature is a statement, "I agree to rely on these Complaint Procedures to Resolve issues relating to my employment with Scherzinger termite and Pest Control, both during and after my employment."  In the absence of any language suggesting a retroactive intent, Davenport argues that any claims that accrued prior to August 14, 2015 are not subject to the arbitration provision.

As previously noted, federal law favors arbitration.  Agreements to arbitrate disputes must be read broadly, and any doubts must be resolved in favor of arbitration. Scherzinger adopted the arbitration policy with the clear intent that it apply to all employees' problems and complaints.  While the policy is written in present tense

language, that alone is not sufficient to suggest that it creates a demarcation in the treatment of employees whose complaints are based on events that may have occurred prior to August 14, 2015.  Davenport again cites his contention that he is being deprived of his statutory FLSA remedies, which would require the court to construe the agreement to apply only to future claims.  Davenport's statutory remedies are not extinguished by the agreement, and he is free to pursue them in an arbitral forum.  He cites no case law suggesting that the language of Scherzinger's contract must be read to bar its application to his FLSA claims that arose prior to the agreement's effective date, and the Court therefore rejects his arguments on this issue.

## CONCLUSION

For all of the foregoing reasons, the Court grants Defendant's motion to dismiss (Doc. 20), and grants its motion for judgment on the pleadings with respect to Davenport's claim of fraudulent inducement (Doc. 38).  Steven Davenport is dismissed as a party plaintiff from this case.  If Davenport wishes to pursue his FLSA and Ohio wage claims, he must do so in an arbitration proceeding before the AAA in Cincinnati, Ohio.

SO ORDERED.

DATED: May 25, 2016                          s/Sandra S. Beckwith
                                             Sandra S. Beckwith, Senior Judge
                                             United States District Court